# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DALLAS E. BROOKS,** | ) | |
| Plaintiff | **)** | |
| | ) | |
| v. | ) | Civil Action No. 2:03cv00026 |
| | ) | **MEMORANDUM OPINION** |
| **JO ANNE B. BARNHART**, | ) | |
| **Commissioner of Social Security,** | ) | By:  PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits, and I remand this case to the Commissioner for further consideration.

## I.  Background and Standard of Review

Plaintiff, Dallas E. Brooks, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"),  under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423  (West 2003).  Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966).  "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'"  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Brooks filed his application for DIB on or about August 14, 2000, alleging disability as of October 26, 1999, based on arthritis and right shoulder and back pain.  (Record, ("R."), at 56-58, 73.)  The claim was denied initially and upon reconsideration.  (R. at 40-42, 43, 44-45.) Brooks then requested a hearing before an administrative law judge, ("ALJ").  (R. at 46.)  The ALJ held a hearing on October 30, 2001, at which Brooks was represented by counsel.  (R. at 378-98.)

By decision dated December 19, 2001, the ALJ denied Brooks's claim for benefits.  (R. at 23-30.)  The ALJ found that Brooks met the disability insured status requirements of the Act through the date of his decision.  (R. at 28.)  The ALJ found that Brooks had not engaged in substantial gainful activity since October 26, 1999. (R. at 28.)  The ALJ also found that the medical evidence established that Brooks had severe impairments, namely degenerative disc disease of the lumbar spine and right shoulder cuff and biceps tendinitis, but he found that these impairments did not meet or medically equal one of the listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26, 29.)  The ALJ further found that Brooks's allegations

-2-

regarding his limitations were not totally credible. (R. at 29.) The ALJ concluded that Brooks had the residual functional capacity to perform light work[1] as indicated in the assessment of Jane Mayes, P.T. (R. at 29.) Thus, the ALJ found that Brooks was unable to perform any of his past relevant work. (R. at 29.) Based on Brooks's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Brooks could perform, including those of a gate guard, a greeter and a crossing guard. (R. at 29.) Therefore, the ALJ found that Brooks was not disabled as defined by the Act and was not eligible for benefits. (R. at 29-30.) *See* 20 C.F.R. § 404.1520(g) (2004).

After the ALJ issued his decision, Brooks pursued his administrative appeals, (R. at 18), but the Appeals Council denied his request for review. (R. at 14-16.) Brooks then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2004). The case is before this court on the Commissioner's motion for summary judgment filed November 3, 2004.

## *II. Facts*

Brooks was born in 1954, (R. at 56), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. § 404.1563(c). He obtained his

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2004).

Case 2:03-cv-00026-PMS   Document 17   Filed 05/04/05   Page 3 of 14   Pageid#: 41

general equivalency development, ("GED"), diploma and has past relevant work experience as a foreman and coal miner. (R. at 74, 84-85.)

At his hearing, Brooks testified that he was released to return to work without restrictions after his second shoulder surgery. (R. at 385.) He stated that he had right shoulder pain in rainy or cold weather and that he had problems raising his arm overhead. (R. at 388.) Brooks stated that he had back pain which increased with activity. (R. at 389.) He stated that he could drive for 30 minutes without interruption. (R. at 389.) Brooks stated that he was able to deal with his pain and perform better when he was prescribed Oxycontin. (R. at 391.)

Norman E. Hankins, a vocational expert, also was present and testified at Brooks's hearing. (R. at 394-97.) Hankins was asked to consider an individual of Brooks's age, education and past work history, who could perform light work, which did not require use of the right arm overhead or in reaching type activities. (R. at 394-95.) Hankins testified that such an individual could perform jobs that existed in significant numbers in the national economy, including those of a gate guard, a gate tender, an assembler and a hand packager. (R. at 395.) Hankins was next asked to consider the same individual, but who was restricted as indicated in the assessment completed by Jane Mayes, P.T. (R. at 355-56, 395-96.) Hankins testified that such an individual could perform jobs that existed in significant numbers in the national economy, including those of a gate guard and a greeter. (R. at 396.) Hankins stated that there would be no jobs available that an individual could perform if his pain were severe and occurred on a frequent basis causing interference with his ability to concentrate and persist at work tasks. (R. at 396.) He also stated that there would be

-4-

no jobs available that such an individual could perform if he had difficulty standing or walking on hard surfaces. (R. at 397.)

In rendering his decision, the ALJ reviewed records from Indian Path Medical Center; 1st Step Rehab; Dr. Patrick J. Riggins, M.D.; Dr. Richard C. Norton, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Jim C. Brasfield, M.D.; Park Avenue Wellness; and Dr. William Platt, M.D. Brooks's attorney also submitted medical records from Dr. Joseph F. Smiddy, M.D., to the Appeals Council.[2]

In October 1998, Dr. Patrick Riggins, M.D., performed a right shoulder arthroscopy with arthroscopic anterior acromionectomy and subacromial decompression with coracoacromial ligament release and arthroscopic bursectomy. (R. at 118-20.) Discharge diagnosis was right shoulder rotator cuff tendinitis with impingement and acromioclavicular joint arthritis. (R. at 118.) In October 1999, Brooks underwent right shoulder arthroscopy to address persistent bicep tendinitis. (R. at 113-17.) In November 1999, Dr. Riggins reported that Brooks was neurologically intact and he had good sensation in the outer aspect of his shoulder. (R. at 273.) Brooks reported that he had less pain in his shoulder than he had in the past. (R. at 273.) In April 2000, Brooks underwent right shoulder manipulation for a frozen shoulder and was released in stable condition. (R. at 109-10.) In May 2000, Brooks reported that he was doing much better; however, he reported that his biggest difficulty

_____

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 14-16), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Case 2:03-cv-00026-PMS   Document 17   Filed 05/04/05   Page 5 of 14   Pageid#: 43

was crawling. (R. at 266.) Dr. Riggins reported that Brooks had "excellent range of motion" and good strength. (R. at 266.) In June 2000, Dr. Riggins reported that Brooks continued to improve and that he had reached maximum medical improvement. (R. at 265.) He reported that Brooks could return to work without restrictions. (R. at 265.)

Rehabilitation progress notes from 1st Step Rehab show that Brooks participated in rehabilitation from November 1998 through May 2000. (R. at 123-264.) Progress notes from April 2000 through June 2000 show that Brooks made good progress with regular therapy sessions. (R. at 121-22.) Brooks had right shoulder strength at 4/5 with the remaining right upper extremity measuring at 5/5. (R. at 121.) Brooks was able to move his shoulder in all planes of motion and was actively able to move his shoulder within full limits for all motions. (R. at 122.)

On February 8, 1999, Dr. Richard C. Norton, M.D., saw Brooks for his complaints of right shoulder pain. (R. at 324.) Dr. Norton reported that Brooks had good range of motion. (R. at 324.) Dr. Norton diagnosed shoulder pain associated with acromioclavicular joint arthritis. (R. at 324.) On February 22, 1999, Brooks complained of low back pain. (R. at 319.) Dr. Norton reported that Brooks had some tenderness at the paravertebral muscles on the left. (R. at 320.) Range of motion was fairly good. (R. at 320.) X-rays of Brooks's lumbar spine showed degenerative changes in the L3-L4 disc spaces and also the facets at L5-S1. (R. at 319.) Dr. Norton diagnosed low back pain and muscle strain. (R. at 320.) On February 25, 1999, an MRI of Brooks's lumbar spine was unremarkable. (R. at 317.)

-6-

On October 17, 2000, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Brooks had the residual functional capacity to perform medium[3] work. (R. at 325-32.) He indicated that Brooks could frequently climb, balance, kneel and crawl and occasionally stoop and crouch. (R. at 327.) Dr. Surrusco also indicated that Brooks's ability to reach in all directions was limited in his right extremity. (R. at 328.) No visual, communicative or environmental restrictions were noted. (R. at 328-29.)

On November 27, 2000, Dr. Jim C. Brasfield, M.D., saw Brooks for his complaints of low back pain. (R. at 344-46.) Dr. Brasfield reported that Brooks had intact reflexes and full range of motion in his upper extremities and normal strength. (R. at 345.) Straight leg raising tests were negative on the right and positive at 80 degrees on the left. (R. at 345.) Brooks had no lumbar spasm, he walked normally and had no strength loss. (R. at 345.) Dr. Brasfield diagnosed lumbar spondylosis with suspected left L5 radiculopathy. (R. at 345.) On December 12, 2000, a CT scan of Brooks's lumbar spine showed mild degenerative changes at the L3-L4 level characterized by disc space narrowing and a mild diffuse disc protrusion. (R. at 341.) A bone scan was normal. (R. at 342.) A lumbar myelogram showed subtle posterior convexity at the L3-L4 level, which may indicate disc protrusion. (R. at 339-40.) On December 20, 2000, an electrodiagnostic study showing findings suggestive of a probable left L5 radiculopathy subacute to chronic with possible reinnervation pattern. (R. at 336-38.) No evidence of peripheral nerve injury or polyneuropathy was noted.

---

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he also can do sedentary and light work. See 20 C.F.R. § 404.1567(c) (2004).

-7-

(R. at 336.)

On April 17, 2001, Jane Mayes, P.T., conducted a Functional Capacity Evaluation. (R. at 355-65.) Mayes reported that Brooks rated his pain at 9/10. (R. at 355.) Mayes reported that this high level of pain did not correlate to observed behavior and movement patterns during testing. (R. at 355.) Mayes reported that among Brooks's physical work strengths were his normal bilateral hand grip strength and his unrestricted ability to crawl, to crouch, to sit, to walk and to balance. (R. at 355.) Mayes noted that Brooks's work strengths included his ability to frequently sit, to bend forward repetitively, to rotate from sitting to standing and to climb stairs and ladders. (R. at 355.)

Regarding Brooks's ability to lift and carry items, Mayes reported that Brooks could: horizontally lift items weighing up to 30 pounds occasionally, 20 pounds frequently and 10 pounds constantly; front carry items weighing up to 25 pounds occasionally, 20 pounds frequently and 10 pounds constantly; right or left side carry up to 25 pounds occasionally, 20 pounds frequently and 10 pounds constantly; and could push 57 pounds occasionally, 38 pounds frequently and 19 pounds constantly. (R. at 355.) Mayes reported that Brooks could occasionally kneel and perform repetitive squatting. (R. at 355.) Mayes reported that Brooks could infrequently lift items weighing 10 pounds from floor to waist. (R. at 355.) She indicated that Brooks could occasionally lift items weighing up to 15 pounds and 10 pounds frequently from waist to eye level. (R. at 355.) Mayes reported that Brooks's demonstrated capabilities

-8-

matched the sedentary[4] physical demand level, with the exception of occasionally lifting items weighing 10 pounds from floor to waist. (R. at 356.)

On June 7, 2001, Dr. William Platt, M.D., saw Brooks for complaints of constant back and left leg pain. (R. at 368-70.) Dr. Platt reported that Brooks was able to move on and off the exam table without difficulty. (R. at 369.) Brooks had adequate range of motion of his extremities. (R. at 369.) Brooks could forward flex to 90 degrees and straight leg raising tests were positive on the left. (R. at 369.) On October 4, 2001, Dr. Platt reported that Brooks had increased pain with extension, and straight leg raising caused localized low back pain on the left. (R. at 366.)

By letter dated May 2, 2002, Dr. Joseph F. Smiddy, M.D., reported that Brooks had coal worker's pneumoconiosis. (R. at 375-76.) A chest x-ray showed simple pneumoconiosis and hyperinflation of the lungs suggestive of emphysema. (R. at 376-77.) Dr. Smiddy reported that Brooks was 100 percent totally and permanently disabled from any type of gainful employment. (R. at 375.) He reported that Brooks's impairments also interfered with his activities of daily living and that his prognosis was guarded. (R. at 375.)

---

[4]Sedentary work involves lifting up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2004).

-9-

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2004). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2004). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2004).

By decision dated December 19, 2001, the ALJ denied Brooks's claim for benefits. (R. at 23-30.) The ALJ found that the medical evidence established that Brooks had severe impairments, namely degenerative disc disease of the lumbar spine and right shoulder cuff and biceps tendinitis, but he found that these impairments did not meet or medically equal one of the listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26, 29.) The ALJ concluded that Brooks had the residual functional capacity to perform light work as indicated in the assessment of Jane Mayes, P.T. (R. at 29.) Thus, the ALJ found that Brooks was unable to perform any of his past relevant work. (R. at 29.) Based on Brooks's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Brooks could perform, including those of a gate guard, a greeter and a crossing guard. (R. at 29.) Therefore, the ALJ found that Brooks was not disabled as defined

-10-

by the Act and was not eligible for benefits. (R. at 29-30.) *See* 20 C.F.R. § 404.1520(g) (2004).

In his brief, Brooks argues that the ALJ erred in assessing the credibility of his complaints of pain. (Plaintiff's Response To Defendant's Motion For Summary Judgment, ("Plaintiff's Brief"), at 3-4.) He also argues that the ALJ erred in finding that he had good range of motion. (Plaintiff's Brief at 4.) Finally, Brooks argues that the Appeals Council erred in failing to remand his case for consideration of new evidence. (Plaintiff's Brief at 5.)

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Brooks argues that the ALJ did not properly consider his allegations of pain. Based on my review of the ALJ's decision, however, I find that the ALJ considered Brooks's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and

-11-

degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Brooks's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 26-27.) There is no evidence of strength or sensory loss and medical records reveal adequate range of motion of the extremities. (R. at 122, 265-66, 324, 345.) The ALJ also considered Brooks's activities of daily living. (R. at 27.) Based on this, I find that the ALJ considered Brooks's allegations of pain in accordance with the regulations.

-12-

Nonetheless, I will remand this case for further consideration of Brooks's pulmonary impairment.

In his brief, Brooks argues that the Appeals Council erred by failing to consider the report of Dr. Joseph F. Smiddy, M.D. As stated above, the court's review in these cases is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman*, 829 F.2d at 517. It is not this court's function to weigh the evidence, nor does this court have the authority to substitute its judgment for that of the Commissioner, if her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456.

In considering this case at this stage, the court must determine whether substantial evidence exists in the record to support the ALJ's finding based on the entire record that was before the Commissioner, including that evidence submitted to the Appeals Council. *See Wilkins*, 953 F.2d at 96.

Therefore, the court must review the ALJ's findings in light of the additional evidence submitted to the Appeals Council. Additional evidence shows that, based on a chest x-ray performed on December 13, 2001, just six days before the ALJ's decision, Brooks suffered from a severe pulmonary impairment, coal worker's pneumoconiosis. Unfortunately, the Appeals Council did not address this additional evidence and its impact on Brooks's work-related abilities. For that reason, I will vacate the Commissioner's decision denying benefits and remand this case to the

-13-

Commissioner for consideration of this evidence.

*IV. Conclusion*

For the foregoing reasons, I will deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further consideration.

An appropriate order will be entered.

DATED:      May 4, 2005.

/s/   Pamela Meade Sargent

UNITED STATES MAGISTRATE JUDGE

-14-